# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Courtney Valle Bisbee,<br>Petitioner,<br>v.<br>Charles L Ryan, et al.,<br>Respondents. | No. CV-12-00682-PHX-ROS<br>**ORDER** |

In 2006, Petitioner Courtney Valle Bisbee was convicted in state court of two counts of molestation of a child. After extensive proceedings in state court, Bisbee filed a petition for writ of habeas corpus in this court. Magistrate Judge David K. Duncan issued a Report and Recommendation concluding Bisbee was not entitled to relief. Bisbee filed objections but, having reviewed each ground for relief identified in the Amended Petition, the Court agrees she is not entitled to relief.

## FACTUAL BACKGROUND

As of early 2004, Bisbee was in her early 30s but was spending a substantial amount of time with a group of teenagers. Bisbee was especially close to J.V., who was thirteen at the time. (Doc. 41-5 at 46). In February 2004, Bisbee, J.V., and others were in a bedroom. Bisbee and J.V. were lying on the floor, side by side, underneath a blanket. Bisbee and J.V. kissed, Bisbee touched J.V.'s penis over his underwear, and Bisbee placed J.V.'s hand inside her underwear. As a result of that touching, Bisbee was arrested and later indicted on three counts of molestation of a child and three counts of

public indecency to a minor. The three molestation counts were based on Bisbee touching J.V.'s penis, Bisbee having J.V. touch her genitals, and Bisbee having J.V. "fondle" her breast. (Doc. 41-2 at 5). The public indecency charges were based on Bisbee alleging touching J.V.'s penis while three other teenagers were in the room.

In November 2005, Bisbee elected to proceed to a bench, not jury, trial. At trial, both Bisbee and J.V. testified. The trial court credited J.V.'s version of events and found Bisbee guilty of two counts of molestation of a child based on her touching J.V.'s penis and having J.V. touch her genitals. (Doc. 41-5 at 46). The trial court determined there had been no evidence to support the other molestation count and the state had not carried its burden on the three counts of public indecency. (Docs. 41-3 at 195; 41-5 at 45). For the two counts she was convicted on, Bisbee was sentenced to eleven years of imprisonment.

Bisbee pursued a direct appeal but raised only one issue involving the trial court's exclusion of expert testimony; her convictions were affirmed. Bisbee then pursued a petition for post-conviction relief in state court. That petition raised a variety of claims based on somewhat convoluted claims for ineffective assistance of trial counsel, "involuntary waiver of fundamental right to trial by jury," and newly discovered evidence involving statements by J.V. (Doc. 3-6 at 23). The trial court rejected all of those claims as did the Arizona Court of Appeals. Bisbee, acting pro se, filed a second and third petition for post-conviction relief in state court. Those later petitions also were rejected.

In March 2012, Bisbee filed the present petition in federal court. After some initial confusion regarding the status of her state post-conviction proceedings, Bisbee filed her Amended Petition asserting thirteen allegedly distinct claims for relief. (Doc. 32). Those claims, as best as the Court can understand them, are as follows:

1. Newly discovered evidence in the form of an affidavit by one of the teenagers establishes Bisbee's innocence;

2. Newly discovered evidence establishes Bisbee's statements to the police were "coerced and involuntary" and should not have been admitted at trial;

| | |
|---|---|
| 1 | 3. Bisbee was denied effective assistance of trial counsel in twelve different |
| 2 | ways; |
| 3 | 4. Newly discovered evidence establishes the prosecution failed to comply |
| 4 | with its *Brady* obligations to disclose the entirety of J.V.'s statement to the police; |
| 5 | 5. Newly discovered evidence establishes the prosecution failed to comply |
| 6 | with its *Brady* obligations to disclose the criminal history of J.V.'s mother; |
| 7 | 6. Newly discovery evidence establishes J.V. and his mother "were motivated |
| 8 | by financial considerations to lie about the alleged molestation"; |
| 9 | 7. Bisbee's right to remain silent was violated through an "extensive |
| 10 | interrogation" that led to her making incriminating statements; |
| 11 | 8. Bisbee was denied due process by the police failing to obtain physical |
| 12 | evidence or interview witnesses; |
| 13 | 9. Bisbee was denied effective assistance of appellate counsel in three |
| 14 | different ways; |
| 15 | 10. Bisbee was denied due process and a fair trial because the prosecution |
| 16 | "failed to present material inconsistencies in [J.V.'s] testimony to the grand jury"; |
| 17 | 11. Bisbee's rights were violated by the police entering "her home to conduct a |
| 18 | warrantless arrest and search"; |
| 19 | 12. Bisbee was denied a fair trial by the exclusion of her proposed expert |
| 20 | testimony; and |
| 21 | 13. The trial court "erred" by not amending an order to correct a factual error. |

(Doc. 32).

In responding to the petition, Respondents argued the first, ninth, and twelfth claims were procedurally defaulted. Respondents also argued five of the twelve subclaims within the third claim regarding ineffective assistance of trial counsel were procedurally defaulted. (Doc. 41 at 36). This meant Respondents agreed nine of the claims had been exhausted in their entirety as well as seven subclaims involving ineffective assistance of trial counsel.

On May 11, 2017, Magistrate Judge Duncan issued a Report and Recommendation ("R&R") recommending the petition be denied in its entirety. The R&R attempted to group Bisbee's often-overlapping claims into categories and then analyzed the similar claims together. The R&R concluded certain claims were procedurally defaulted, including at least one claim Respondents did not argue was procedurally defaulted.[1] And for those claims not procedurally defaulted, the R&R concluded they failed on their merits. Bisbee filed objections to the R&R and Respondents filed a response to those objections.

Throughout the entirety of Bisbee's federal proceedings there has been substantial confusion regarding the procedural status of each claim for relief. It is undisputed some of Bisbee's claims were resolved in state court such that they must be resolved on their merits. *Cf.* 28 U.S.C. § 2254(d) (standard of review for claims resolved in state court). But there appear to be other claims Bisbee did not raise in state court and those claims likely are procedurally defaulted. Determining the procedural posture of each claim, however, would require a substantial amount of work. Given the arguments Bisbee has made, it is simplest to analyze each claim under the de novo standard of review. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (noting § 2254(b)(2) allows a court to "deny a claim on the merits notwithstanding the petitioner's failure to exhaust the remedies available in state court").

---

[1] The R&R concluded Ground Ten was procedurally defaulted. (Doc. 99 at 21). Respondents, however, did not identify Ground Ten as procedurally defaulted. (Doc. 41 at 36). Instead, Respondents argued Ground Ten—at least portions of it—should be analyzed on its merits. (Doc. 41 at 76). While a district court may raise procedural default on its own, there are limits to when it is appropriate to do so and certain procedures must be followed. *See Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998) ("A habeas court must give a petitioner notice of the procedural default and an opportunity to respond to the argument for dismissal."). Instead of trying to determine the procedural posture of Ground Ten, it is simplest to analyze it, along with all of the other claims, on the merits.

# ANALYSIS

Instead of grouping Bisbee's claims into categories based on the underlying factual similarities between certain claims, the Court will analyze each claim in the order in which it is presented in the petition.

## I. Newly discovered evidence in the form of an affidavit by one of the teenagers establishes Bisbee's innocence

Bisbee's first claim alleges there is "newly discovered evidence" that entitles her to relief. That evidence consists of post-trial statements by two individuals. The first statement comes from J.V's older brother who was in the room when Bisbee and J.V. had sexual contact. J.V.'s brother testified at trial but, approximately one year later, the brother allegedly recanted his trial testimony. The second statement comes from one of J.V.'s "close friend[s]." That friend came forward after trial and stated J.V. told her nothing happened between him and Bisbee. Based on these statements, Bisbee asserts her rights under the Fifth, Sixth, and Fourteenth Amendments were violated.

It is unclear how the mere fact that additional evidence now exists means Bisbee suffered a violation of her federal rights. It appears, however, that Bisbee is attempting to rely on this alleged new evidence to establish she is innocent. Assuming that is Bisbee's intent, this evidence falls well-short of what is required to establish a viable federal claim based on alleged innocence.

Assuming "a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context," the standard for establishing such a claim is "extraordinarily high." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). To meet that standard, Bisbee would have to "go beyond demonstrating doubt about [her] guilt, and . . . affirmatively prove that [she] is probably innocent." *Id.* In determining if she has made such a showing, the Court must review "all the evidence, old and new, incriminating and exculpatory," and reach a "determination about what reasonable, properly instructed jurors would do." *Id.* at 1247. Here, even accepting that J.V.'s brother recanted and that another individual heard J.V. claim nothing happened, Bisbee

has not established her innocence.

"As a general matter, [r]ecantation testimony is properly viewed with great suspicion." *Id.* at 1248. That is especially true here given that, based on the allegations surrounding the crime, J.V.'s brother did not have personal knowledge regarding the crimes. That is, J.V.'s brother was not underneath the blanket during the relevant time, and, therefore, was not in a position to see whether J.V. and Bisbee had sexual contact. Thus, the brother's alleged "recantation" is of little value.

Similarly, the fact that J.V. told a friend nothing happened is of little value. According to the record, J.V. was telling "everybody . . . nothing happened" because he "want[ed] to stop talking about" it. (Doc. 43 at 80). It is not surprising that a teenager might be embarrassed by the relevant events, especially in light of mocking comments made by his peers. (Doc. 43 at 80) (Question: "[K]ids were calling you the nurse fucker and that type of stuff, right?" Answer: "Right."). Also, "nothing happened" from a teenager is ambiguous. It does not specifically refer to the alleged sexual activities. Thus, the alleged statement by J.V. to his friend does not meaningfully impact the core inquiry of guilt or innocence.

Viewing all the evidence presented at trial, the recantation by J.V.'s brother and the evidence that J.V. denied the events took place to another individual does not seriously undermine confidence in Bisbee's conviction. Therefore, Bisbee's claim that this "newly discovered evidence" establishes her innocence is not convincing.

**II. Newly discovered evidence establishes Bisbee's statements to the police were "coerced and involuntary" and should not have been admitted at trial**

Bisbee's second claim involves a new statement from an expert witness. After Bisbee was convicted, she retained a "renowned expert on false confessions." (Doc. 32 at 9). That expert reviewed Bisbee's statements to the police and determined her statements were "coerced and . . . her denials of sexual contact with [J.V.] were likely truthful." (Doc. 32 at 9). It is unclear how, exactly, Bisbee believes the expert's testimony entitles her to federal habeas relief. But again, it appears she is relying on this

new evidence as establishing her innocence. (Doc. 32 at 9).

To the extent Bisbee is attempting to establish this new evidence establishes her "actual innocence," this evidence similarly falls well short of meeting the "extraordinarily high" requirement for prevailing on such a claim. *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). Considering this evidence together with the "newly discovered evidence" discussed earlier does not undermine confidence in the verdict. Therefore, the expert's opinion is not a sufficient basis for relief.

Beyond a claim involving her alleged innocence, Bisbee may be claiming the expert's opinion establishes her statement to police was coerced such that it should not have been admitted at trial. Determining whether Bisbee's statement was voluntary and therefore properly admitted requires the Court "assess the totality of all the surrounding circumstances." *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003). Those circumstances include "police coercion, . . . the length of the interrogation, its location, . . . its continuity," whether the police advised Bisbee of her rights, and whether the police made any promises. *Id.* Here, nothing in Bisbee's interrogation establishes her statement was involuntary. And the opinion of the "expert on false confessions" does not change this conclusion. Thus, Bisbee is not entitled to relief on her second claim.

**III. Bisbee was denied effective assistance of trial counsel in twelve different ways**

Bisbee's third claim is based on the many ways her trial counsel allegedly provided ineffective assistance. Among other failures, Bisbee believes her counsel failed to conduct proper cross-examination, failed to make crucial objections, conducted an insufficient investigation, failed to call an expert witness, failed to file a motion to suppress, and inappropriately "induced [Bisbee] to waive her constitutional right to a trial by jury." (Doc. 32 at 11). These alleged failures are not a sufficient basis for relief.

To establish ineffective assistance of counsel, Bisbee must establish both prongs of the governing test. That is, she must establish her counsel's performance "fell below an objective standard of reasonableness," and her counsel's "defective performance actually prejudiced [her]." *Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir. 2003). In

conducting this analysis, the Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689. And there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

On the first prong regarding defective performance, Bisbee identifies a great number of decisions she believes counsel should have made differently. But her analysis depends far too much on hindsight and the fact that those decisions did not lead to the result she desired. For example, absent unusual circumstances not present here, the precise scope of cross-examination and the objections to be made are matters of trial strategy, not matters that can be assessed as deficient based on the ultimate verdict. Similarly, the scope of the pretrial investigation and which witnesses to call involve strategic choices. While Bisbee believes her counsel should have acted differently, her counsel's performance fell inside the "wide range of reasonable professional assistance." *Id.*

Even if the Court were to agree with Bisbee that some of the alleged errors met the first prong for ineffective assistance of counsel, she has not established she suffered prejudice as a result of those errors. Given the crimes at issue, only J.V. and Bisbee knew the crucial facts. Thus, the verdict depended almost entirely on which individual the trial court believed. The extent of cross-examination of other witnesses, the lack of objections, the scope of investigation, and all the other alleged errors do not change that core inquiry. And most importantly, none of the alleged failures by counsel would have materially impacted J.V.'s credibility. Bisbee has not, therefore, established a reasonable probability of a different result. *Strickland*, 466 U.S. at 693. Bisbee's claim for ineffective assistance of trial counsel fails under both prongs of the applicable test.

**IV. Newly discovered evidence establishes the prosecution failed to comply with its *Brady* obligations to disclose the entirety of J.V.'s statement**

Bisbee's fourth claim involves an alleged violation of her rights under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), and its progeny. Bisbee argues the prosecution failed to turn over three pages of the written transcript of J.V.'s interview with the police. But Bisbee has not carried her burden of establishing that alleged failure entitles her to relief.

To establish a *Brady* violation, Bisbee must show the prosecution withheld the three pages of the transcript, the pages were favorable to her because they were exculpatory or impeaching, and the pages qualified as "material" to her guilt or innocence. *See Sanders v. Cullen*, 873 F.3d 778, 802 (9th Cir. 2017). The "materiality" requirement does not depend on showing Bisbee "more likely than not [would] have received a different verdict with the evidence, but whether in its absence [she] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

There is a threshold issue which remains unresolved and which complicates any analysis of this issue. The parties disagree whether Bisbee's trial counsel did, in fact, receive the allegedly withheld transcript pages prior to trial. It is undisputed that other portions of J.V.'s interview were turned over and there is no obvious explanation why the prosecution would not have turned over the three pages. Similarly, there is no obvious explanation why Bisbee's counsel would not have inquired about the missing pages if they were, in fact, missing. Without conclusively establishing the pages were withheld, Bisbee's claim fails at the outset. In an abundance of caution, however, the Court will assume the pages were not turned over and analyze whether that failure violated Bisbee's rights under *Brady*.

Reviewing the three pages, they contain statements by J.V. regarding his interactions with Bisbee. Two of the three pages, however, do not contain any exculpatory or impeachment material. One of the pages consists of J.V. relaying a conversation where Bisbee told him she recently had sex with someone else. (Doc. 4-7 at 33). Another page consists of J.V. relaying a statement Bisbee allegedly made that "she doesn't really want to go out with kids but . . . she made an exception for [J.V.]." The statement that Bisbee recently had sex with someone else appears irrelevant and the statement that Bisbee "made an exception" to go out with J.V. is inculpatory. Bisbee

does not cite any authority faulting the prosecution for not turning over irrelevant or additional inculpatory evidence.

The only possible portion of the pages that might qualify as information that should have been turned over is found in a statement by J.V. recounting the sequence of events that led up to the sexual contact. (Doc. 4-7 at 32). That statement, however, is largely consistent with J.V.'s trial testimony. (Doc. 41-3 at 80-82). Contrary to Bisbee's statement, it is not a "radically different time sequence." (Doc. 101 at 3). Thus, even this statement is impeachment material of very little value. But accepting that small portion of J.V.'s statement should have been turned over, Bisbee still has not established a *Brady* violation.

Under the most charitable reading of the record, the prosecution did not turn over a single statement made by J.V. that Bisbee might have used for very minimal impeachment purposes. Given the limited nature of that statement, it does not undermine confidence in the verdict. As noted earlier, the trial came down to a credibility contest and the allegedly withheld statement would not have meaningfully undercut J.V.'s credibility. Therefore, Bisbee's due process rights were not violated by the prosecution's alleged failure to turn over the three pages.

**V. Newly discovered evidence establishes the prosecution failed to comply with its *Brady* obligations to disclose the criminal history of J.V.'s mother**

Bisbee's fifth claim is another claim that the prosecution violated its *Brady* obligations. According to Bisbee, J.V.'s mother had been arrested for shoplifting in the past but that information was not disclosed. Assuming this information was not disclosed, Bisbee cannot establish a violation of her rights.

The fact that J.V.'s mother had been arrested for shoplifting had some impeachment value. But that value is remarkably small. First, there was no indication J.V.'s mother had been convicted. And an arrest, without conviction, may not be an appropriate way to impeach a witness. At the very least, an arrest without a conviction does not appear especially probative of her credibility. But, again in an abundance of

caution, the court will assume the arrest record should have been disclosed. Even under that assumption, however, Bisbee falls short of any entitlement to relief.

The mother's testimony was a very small part of the evidence presented at trial. In fact, the mother did not offer testimony regarding the crucial events. Assuming Bisbee had the information and had successfully impeached the mother with her arrest, there is an overwhelming likelihood the result would have been the same. Therefore, cast in terms of a *Brady* claim, the mother's arrest record was not "material" to Bisbee's guilt or innocence.

**VI. Newly discovery evidence establishes J.V. and his mother "were motivated by financial considerations to lie about the alleged molestation"**

Bisbee's sixth claim involves another assertion that "newly discovered evidence" entitles her to relief. Bisbee believes she has "newly discovered evidence" that J.V.'s mother had "financial considerations to lie about the alleged molestation." The new evidence is that J.V.'s mother retained "civil counsel two years prior to [Bisbee's] trial . . . for the purpose of instituting [a civil] lawsuit." (Doc. 32 at 16). Bisbee apparently believes the fact that J.V.'s mother discussed the possibility of retaining civil counsel after the molestation establishes the entire episode was fabricated. Bisbee does not explain the type of claim she is asserting based on this alleged newly discovered evidence, Respondents did not explain the nature of the claim in their response, and the Court cannot discern any obvious claim. The Court is left to guess how this evidence establishes a violation of Bisbee's constitutional rights.

If Bisbee is arguing this evidence establishes her actual innocence, it does not meet the demanding standard. Even viewed with all the other "newly discovered evidence" Bisbee points to, she has not established she is innocent. Alternatively, if Bisbee is arguing the prosecution had an obligation to turn this information over before trial, there is no indication the prosecution was aware of these facts before trial. The prosecution did not have an obligation to turn over information it neither knew nor should have known. Finally, to the extent Bisbee is attempting to make out some alternative

claim based on the alleged financial motivations, she has not done so in a sufficiently clear manner to allow the Court to address such a claim.

**VII. Bisbee's right to remain silent was violated through an "extensive interrogation" that led to her making incriminating statements**

Bisbee's seventh claim involves her interrogation. She seems to believe the introduction at trial of her statements to the police violated her rights. The legal basis of this claim is not clear but it appears to be duplicative of her earlier claim that her statements to the police were involuntary. As set out above, Bisbee has not established her statements were involuntary. Thus, this claim fails.

**VIII. Bisbee was denied due process by the police failing to obtain physical evidence or interview witnesses**

Bisbee's eighth claim is based on the manner in which the police conducted their investigation. Bisbee believes the police intentionally conducted a shoddy investigation as evidenced by their failure to locate and interview all potential witnesses, failure to collect evidence, and failure to physically examine her when she was arrested. In sum, Bisbee argues the police did not investigate the crime in the manner Bisbee would have preferred and that failure means her conviction was a violation of her constitutional rights. That is not correct.

Bisbee does not point to any general constitutional right to have the police conduct an investigation in a particular way. And failures to interview certain individuals or collect certain evidence are not enough, on their own, to establish a due process violation. The only portion of Bisbee's claim that has some basis in existing law involves her claim that the police violated her due process rights by failing to collect certain exculpatory evidence. Even that portion fails, however, because "failure to preserve potentially useful evidence does not constitute a denial of due process of law" unless the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Bisbee has not made any showing that the police acted in bad faith. The claim based on the police's investigation fails.

**IX. Bisbee was denied effective assistance of appellate counsel in three different ways**

Bisbee's ninth claim is based on the actions of her appellate counsel. Bisbee claims she was denied effective assistance of appellate counsel because that counsel did not investigate the plan by J.V. and his mother to pursue a civil lawsuit, did not highlight discrepancies in J.V.'s trial testimony, and did not argue Bisbee's custodial interrogation should have been suppressed. As with her claims regarding trial counsel, Bisbee has not established either prong of the applicable test. That is, appellate counsel did not perform deficiently by failing to pursue these arguments nor has she established she suffered prejudice as a result of counsel's failures.

**X. Bisbee was denied due process and a fair trial because the prosecution failed to present material inconsistencies in [J.V.'s] testimony to the grand jury**

Bisbee's tenth claim is based on defects in the grand jury process. Bisbee believes she was denied due process when the prosecution did not highlight to the grand jury inconsistencies in J.V.'s testimony. Bisbee does not point to the legal basis for this claim and there does not appear to be one. Errors of the sort Bisbee alleges are not cognizable on federal habeas relief. "For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *Jones v. Annucci*, 124 F. Supp. 3d 103, 124 (N.D.N.Y. 2015).

**XI. Bisbee's rights were violated by the police entering "her home to conduct a warrantless arrest and search"**

Bisbee's eleventh claim is based on alleged violations of her Fourth Amendment rights. Bisbee seems to believe her warrantless arrest and search provide a basis for federal habeas relief. But it is well-established "[a] Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Bisbee had such an opportunity and this claim fails.

**XII. Bisbee was denied a fair trial by the exclusion of her proposed expert testimony**

Bisbee's twelfth claim involves the trial court's refusal to permit Bisbee to call an expert witness. Bisbee has not provided a clear explanation of how the exclusion of this witness violated her constitutional rights. In general, criminal defendants are entitled to call witnesses on their behalf. *Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) ("The right to compulsory process encompasses [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary."). But "[a] party in a criminal case does not have unfettered discretion to call witnesses." *United States v. Ross*, 372 F.3d 1097, 1113 (9th Cir. 2004); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). Bisbee has not established the exclusion of her proposed witness rose to the level of a violation of her rights.

**XIII. The trial court "erred" by not amending an order to correct a factual error**

Bisbee's final claim for relief appears to involve her belief that the trial court erred by not amending a prior decision to address newly discovered evidence regarding the alleged plan by J.V. and his mother to file a civil lawsuit. While difficult to understand, Bisbee appears to be claiming the trial court erred by failing to accept her arguments. The trial court was not obligated to change its decision based on the alleged newly discovered evidence regarding a civil lawsuit. Bisbee is not entitled to relief on this claim.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 99) is **ADOPTED** to the extent it is consistent with the analysis above and **REJECTED** to the extent it is inconsistent.

**IT IS FURTHER ORDERED** the Petition for Writ of Habeas Corpus (Doc. 32) is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability and leave to

proceed in forma pauperis on appeal are **DENIED** because the petition does not make a substantial showing of the denial of a constitutional right.

Dated this 6th day of February, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge